## CONSTRUCTION OF DEVISE TO WIDOW.

Circuit Court of Lorain County.

WILLIAM WHITE ET AL V. EDGAR M. FREEMAN ET AL.

Decided, May 1, 1907.

*Will—Life Estate—Remainder Over.*

The will of Jacob Henry White, after providing for the payment of his just debts and funeral expenses and one dollar to each of his three children, willed his property as follows:

"Third. All the rest of my property and estate I give and devise and bequeath to my beloved wife, Frances S. White, giving her full right and power to adjust and settle all claims due me at my death.

"Fourth. At the death of my said wife, Frances S. White, I will that all property and estate remaining after settling all claims due, such as expenses of last sickness and funeral expenses, and all that remains of my estate, to be devided equally, between my son William White, Dora Stock, and-the heirs of my son John White. That is to say, one-third of the remaining parts of my estate to William White, and one-third part of my estate of Dora Stock, and one-third part of my estate to the children of my son John White."

*Held:* The widow took a life estate in the fund left by her husband, from which should be paid the expenses of her last sickness and funeral expenses and the remainder to those named in her husband's will.

*C. A. Metcalf,* for plaintiffs in error.
*W. B. Johnson,* contra.

MARVIN, J.; WINCH, J., and HENRY, J., concur.

The parties here are as they were in the court below. Plaintiffs sued to recover from defendants certain money which they claim under the will of Jacob Henry White, deceased, and which the defendants claim under the will of Frances S. White, deceased.

Jacob Henry White, a resident of Lorain county, Ohio, died testate. His will was admitted to probate in said county on the 21st day of July, 1900. He left a widow, Frances S. White, who died testate March 25th, 1906.

His will reads as follows:

"In the name of the Beloved Father and of all, Amen:

"I Jacob Henry White, of the township of Pittsfield, county of Lorain and state of Ohio, being about 70 years of age and being of sound and disposing mind and memory, do make and publish and declare this my last will and testament hereby revoking and making null and void all other last wills and testaments by me made heretofore.

"First.    My will is that all my just debts and funeral expenses shall be paid out of my estate as soon after my decease as shall be found convenient.

"Second.    I give, devise and bequeath to my son, William White, now residing in Pittsfield, Lorain county, Ohio, the sum of one dollar, $1.00.    To by son John White, now living in Wellington Ohio, I give to him the sum of $1.00.    To my daughter, Dora Stock now living in Grafton, Ohio, I give to her the sum of one dollar.

"Third.    All the rest of my property and estate I give and devise and bequeath to my beloved wife, Frances S. White, giving her full right and power to adjust and settle all claims due me at my death.

"Fourth.    At the death of my said wife, Frances S. White, I will that all property and estate remaining after settling all claims due. such as expenses of last sickness, and funeral expenses, and all that remains of my estate, to be divided equally between my son William White, Dora Stock, and the heirs of my son John White.    That is to say, one-third of the remaining parts of my estate to William White, and one-third part of my estate to Dora Stock, and one-third part of my estate to the children of my son John White.

"Fifth.    I nominate and appoint my said wife and William Stock, of Grafton, Lorain county, Ohio, executors of this last will and testament.    I desire that no bond as such executors be required, and that no appraisal be made of my estate; and the probate judge of Lorain Co.. Ohio. omit the same if it can be legally done.

"Dated June 23, 1898.

"JACOB HENRY WHITE.

"Witnesses,

        "H. M. PIERCE,
        "R. N. GORDU."

By her last will the widow, Frances S. White, bequeathed her entire property to these defendants.

What transpired in relation to his property after the death of Jacob Henry White is found by the court of common pleas as follows:

"First.   That the plaintiffs are the same persons named in the last will and testament of Jacob White, who died at the date set forth in the petition, as entitled to what remained of his said estate after the interests of said Frances White were disposed of.  That the copy of the will attached to the petition is a true copy of said will.

"Second.  That said Frances White made the application for the probate of his said will, and for letters testamentary to be issued to the persons named as executors in said will in which she testified that his estate consisted of about $500 of personal property and that both she and said William Stock were appointed and qualified as executors under said will, under the terms of which she as such widow elected to take.

"Third.  That the amount for distribution under said will was $314.22, all of which was paid over to the said Frances White under the terms of said will as such widow, in the fall of 1900, who mingled said money with her own, and kept it so mingled during her life, and died on the 25th day of March 1906, having in her possession more than $314.22 in money and other property, all of which was so held under claim of right thereto by her, and she died leaving a will by the terms of which she devised and bequeathed to the said Amy Freeman all the property real and personal of which she should die seized.  The said Amy Freeman and Edgar M. Freeman, were during all said time and still are husband and wife, and said Amy was the niece of said Frances White, whose sister was Amy's mother.  That said Freemans cared for said Frances for some years before her death in various ways, she living near them by herself.  That if they are allowed for their care of her what it is reasonably worth, it would amount to said sum of $314.22 and more.  That the expenses of her last sickness and funeral and burial amount to $75 and were paid by said Freemans.  There was no evidence of any other or further claims against the estate of said Frances White or against her in her lifetime, either due, paid or owing to any one, either before or after her death.

"Fourth.  That at the death of said Frances the said Freemans took and appropriated to their own use all the property which the said Frances had in her possession and no part thereof has been paid to the other persons named in said Jacob's will.

"Fifth.  That said will was written upon the ordinary will blank, and 'Item I' thereof is wholly printed as a part of such blank form, no part thereof being in writing.

"Sixth.  There was no evidence that the said Frances promised to pay said Freemans for the care they bestowed upon her, but the court finds that said care was necessary for her com-

fort and support, and that she had told said Freemans of the said will to said Amy before said support and care were so bestowed upon her.

"Seventh.   That said Frances was the second wife of said Jacob, and the step-mother of all his children, and said Freemans were not related to him except through his marriage to her.

"Eighth.   That the said Frances had and kept an estate separate from said Jacob.   That at the time of their marriage the said Jacob was living upon a farm of fifty acres having a life use thereof, and having some personal property upon the farm, and possibly some money, just how much is impossible to ascertain, but the court finds that it did not amount to very much. Under these circumstances he married said Frances.   Soon after their marriage said Frances began to receive payments upon a legacy of $1,000 due her, and up to 1900 all but $160 of the $1,000 had been paid either to said Frances or to said Jacob White, the greater portion having been paid to him.   That at the death of said Jacob said Frances had certain debts due her, which aggregated $760 and which she collected and mingled with said $314.22, which she received under her said husband's last will. That she used the money thus mingled together for her support for six years and died leaving $740 thereof, in her possession, which she willed to the said Amy Freeman.   That the said Frances White used more than the said $314.22 for her support during the six years she lived after the death of her said husband aforesaid."

The controversy here is as to whether at the time of the death of Frances any of the property then in her possession was held by her in trust for the plaintiffs.   If so, how much?

If she became by the will of Jacob, the absolute owner of the residue mentioned in the third item of his will, then the plaintiffs were not entitled to recover.   If she held all or any part of it in trust, then plaintiffs were entitled to recover the amount of such trust property.

The proper construction of the will of Jacob Henry White determines the entire controversy.

This will was executed by using a printed blank, and the first item is entirely in print and as already quoted reads:

"First.   My will is, that all my just debts and funeral expenses shall be paid out of my estate as soon after my decease as shall be found convenient."

The remainder of the will is in writing.

By the third item, as already quoted, it will be seen that the residuum of the estate is given to Frances, in such terms that, but for what follows, there could be no question as to her becoming the absolute owner under it, by accepting its provisions, as she did.

By the fourth item, however, he undertakes to say what shall become of certain property after the death of Frances and it is contended by the plaintiffs that the language of this item qualifies the ownership in Frances created by the third item.

This, as we hold, depends upon the meaning of the following language in this fourth item, viz, "Remaining after settling all claims due, such as expenses of last sickness and funeral expenses."

If these words were intended as simply a repetition of the printed words of the first item, "My will is, that all my just debts and funeral expenses shall be paid out of my estate," then this fourth item would be in effect a bequeathing of the same property twice. First to Frances and second to those named in the latter part of the fourth item, and the two bequests being repugnant the one to the other, it may at least well be doubted whether the first taker did not become the absolute owner of the property so that there could be nothing for those named in the later item. *Steur* v. *Steur,* 8 C.C.(N.S.), 71.; *Widows Home* v. *Lippardt,* 70 O. S., 261.; *Stuart* v. *Walker,* 72 Maine, 145.

We are of the opinion, however, that the words last quoted from the fourth item were not intended as a repetition of the words last quoted from the first item, but that the testator plainly intended that out of the property named in the third item, the expenses of the last sickness and funeral expenses of Frances should be paid, and that what should remain of the property named in the third item, after such payment, should go to the parties named as takers after the death of Frances.

With this understanding of the words last quoted from the fourth item, we hold that the estate of Frances in this residuum was a life estate, with power to charge the same with the ex-

penses of her last sickness and her funeral expenses, and that after these expenses are deducted the balance should go to the plaintiffs. We are not unmindful that there is room for doubt as to the legal effect of the bequests, even construing the words to mean as we construe them, but we feel that our holding is justified by the decision of the Supreme Court in *Johnson* v. *Johnson,* 51 Ohio State, 446; *Baxter* v. *Bowyer,* 19 Ohio St., 489, and other cases, and though some of the language used in the opinion in *Widows Home* v. *Lippardt, supra,* may indicate that the learned judge, who prepared the opinion, entertained views not in conformity with our views, there is nothing in the syllabus which conflicts with this decision, nor was there anything in the case necessary to be decided, which would involve the question involved in this case.

The judgment is reversed, and as the court there found expenses of the last sickness and funeral expenses to be $75, this court will enter judgment for the plaintiffs for $314.22, less $75, or $239.22, and interest.